UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MCQUIRTER, et al., | No. 2:21-cv-01724-DAD-SCR |
| Plaintiffs, | |
| v. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | (Doc. No. 34) |
| Defendants. | |

This matter is before the court on defendants' motion for summary judgment. (Doc. No. 34.) The pending motion was taken under submission on April 21, 2025. (Doc. No. 41.) For the reasons explained below, defendants' motion for summary judgment will be granted.

**BACKGROUND**

This case arises from plaintiff's[1] allegations of employment discrimination on the basis of race brought against defendant California Department of Corrections and Rehabilitation

/////

/////

---

[1] This action is brought by plaintiff Joseph McQuirter, an oral surgeon, as well as plaintiff corporation Joseph L. McQuirter, DDS, Inc. (Doc. No. 1 at ¶¶ 30–31.) Throughout this order, the court refers to plaintiff McQuirter as "plaintiff."

1

("CDCR") and Doctor Morton Rosenberg, plaintiff's former employer and supervisor respectively.[2]

### A.   Factual Background[3]

From 2010 to 2020, plaintiff's dental practice, Joseph McQuirter, DDS Inc., entered into multiple contracts with defendant CDCR to provide oral surgery services. (DUF at 3.) In February 2019, plaintiff entered into a contract with defendant CDCR that required plaintiff to service 31 of defendant CDCR's institutions throughout the state of California. (*Id.* at 3–4.) Defendant CDCR's contracts are governed by the State of California's bidding procedures; accordingly, a contract between a provider and defendant CDCR cannot be modified without going through a competitive bidding process. (*Id.* at 4–5.) Under defendant CDCR's contracting procedures, CDCR institutions reach out to oral surgery providers in the order they appear on their internal bid matrix list, and the provider is required to "respond as soon as possible" to inform the institution of whether they can provide the required oral surgery services. (*Id.*)

Plaintiff's dental practice was an independent business, and plaintiff was required to cover any expenses incurred in traveling to defendant CDCR's institutions. (*Id.* at 5–6.) Though plaintiff disputes whether he in fact refused to visit certain institutions during his time working with defendant CDCR, plaintiff does not dispute that defendants received the following communications. In 2014, during a prior contract with plaintiff, defendant Dr. Rosenberg received communications indicating that plaintiff was refusing to provide oral surgery services at some CDCR institutions when too few patients were scheduled based upon his concern that it

/////

---

[2] Defendants contend that plaintiff was an independent contractor rather than an employee of defendant CDCR. (Doc. No. 34-1 at 11.) The court need not decide whether plaintiff was an employee or a contract provider of services in resolving the pending motion and, therefore, at times refers to plaintiff in this order as an employee of defendant CDCR only for the sake of brevity.

[3] The relevant facts that follow are derived from the undisputed facts as stated by defendants and responded to by plaintiffs (Doc. No. 39-1 ("DUF")) as well as the declarations and exhibits filed by the parties in support of their respective briefs (Doc. Nos. 34-3, 34-5, 34-6, 34-7, 34-8, 39-2, 39-3.)

would not be cost-effective for him to do so.[4] (*Id.* at 6.) In March 2019, while plaintiff was providing services pursuant to the contract at issue in this case, CDCR officials received emails that they interpreted as indicating that plaintiff was refusing to use the scheduling practices that were set out by the terms of his contract, and those emails were later communicated to defendant Rosenberg and dentist Dr. Marc Weisman.[5] (*Id.* at 7.) In December 2019, Dr. Bains received another email stating that plaintiff was attempting to have his schedule at a CDCR institution modified in order to consolidate patients, which email Dr. Bains forwarded to Drs. Rosenberg and Weisman. (*Id.* at 8.)

In August 2020, Dr. Weisman emailed defendant Dr. Rosenberg and reported that plaintiff was seeking not to go to a CDCR institution if the number of patients in need of treatment was too low and that, alternatively, he sought payment of a flat rate for his services. (*Id.* at 9.) Defendants were unable to authorize a flat rate because such a modification would reopen the contract to competitive bidding. (*Id.* at 9.) Defendant Dr. Rosenberg received an email shortly thereafter indicating that plaintiff had told Dr. Weisman he would not provide services unless enough patients were scheduled at a given facility. (*Id.* at 10.) Defendants assert that they interpreted this position adopted by plaintiff as a failure to abide by the terms of his contract and

---

[4] Plaintiff raises several hearsay objections to various emails that defendants cite in support of their motion for summary judgment. (Doc. No. 39-1 at 6–11.) The court does not, in this order, rely on the statements contained in those emails for the truth of the matter asserted but only as evidence that the emails exist and for the effect they had upon the recipient, namely defendant Dr. Rosenberg. Accordingly, all of plaintiff's objections in this regard are overruled. *See* F. R. Evid. 801 (defining hearsay); *see also Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1157 (S.D. Cal. 2022) (finding that hearsay can be considered when ruling on a motion for summary judgment if it could be presented in an admissible form at trial).

[5] Plaintiff objects to the evidence cited in support of these assertions on hearsay and speculation grounds. (DUF at 7.) As noted above, the communications at issue are not being considered for the truth of the matters asserted therein and plaintiff's hearsay objections are therefore overruled. Plaintiff's "calls for speculation" objection is also overruled as duplicative of the Rule 56 standard applicable on summary judgment. *City of Lincoln v. County of Placer*, 668 F. Supp. 3d 1079, 1086–87 (E.D. Cal. 2023) (overruling an objection on speculation grounds because "[c]ourts disregard irrelevant, indecipherable[,] or speculative evidence and Rule 56 does not permit litigants to oppose summary judgment on the basis of vague assertions or speculation.") (internal citation omitted); *see also Brown v. Rafferty*, No. 2:19-cv-02180-TLN-CKD, 2022 WL 4664596, at *4 (E.D. Cal. Sept. 30, 2022) (overruling speculation objections on the grounds that those objections are duplicative of the summary judgment standard).

made the decision to terminate plaintiff's contract on those grounds. (Doc. No. 34-2 at ¶¶ 28–30.) Plaintiff disputes this assertion, arguing that he had never actually refused to go to one of defendant CDCR's institutions. (DUF at 11.) Plaintiff instead asserts that he was terminated because of his race, which he contends was evident from the disparate treatment given to his successor. (*Id.* at 12.)

Following defendants' termination of plaintiff's contract, defendant CDCR negotiated an emergency contract with Dr. Steven Paul to provide oral surgery services. (*Id.* at 13.) Defendant CDCR provided Dr. Paul with some "considerations regarding scheduling" that were not included in the contract plaintiff had with defendant CDCR. (*Id.* at 13.) Moreover, plaintiff asserts that in its emergency contract with Dr. Paul, defendant CDCR agreed to pay him a guaranteed flat rate for each visit to a prison. (*Id.* at 9.) Notably, it is undisputed that CDCR's emergency contract process allows for the provision of "interim services" without the necessity of submission to the competitive bidding process until a standard contract can be finalized. (*Id.* at 13.) Moreover, neither party has presented any evidence on summary judgment regarding the existence or contents of a standard contract being entered following the emergency contract arrived at by CDCR with Dr. Paul.

**B.    Procedural Background**

On September 21, 2021, plaintiff filed his operative complaint in this action asserting three claims: (1) race discrimination in violation of Title VI of the Civil Rights Act of 1964[6] against all defendants; (2) race discrimination in violation of Title VII of the Civil Rights Act of 1964 against all defendants; and (3) intentional interference with contractual relations only

---

[6] Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d; *see also Alexander v. Sandoval*, 532 U.S. 275, 279 (2001) ("Although Title VI has often come to this Court, it is fair to say (indeed, perhaps an understatement) that our opinions have not eliminated all uncertainty regarding its commands.") As defined in Title VI, the term "program or activity" includes "the operations of" state or local government departments or instrumentalities, colleges or certain systems of higher education, corporations or other private organizations, or a combination of two or more of the foregoing entities. *See* 42 U.S.C. § 2000d-4a.

1 against defendant Dr. Rosenberg.  (Doc. No. 1 at ¶¶ 22–45.)  Plaintiff asserts his claims against
2 defendant Dr. Rosenberg only in the latter's official capacity, rather than in his personal capacity.
3 (*Id.* at ¶ 33.)
4       On February 28, 2025, defendants filed the pending motion seeking summary judgment in
5 their favor as to all of plaintiff's claims and improperly noticed this motion before the assigned
6 magistrate judge.[7]  (Doc. No. 34.)  On March 17, 2025, defendants filed a notice to reschedule the
7 hearing on the motion for summary judgment before the undersigned.  (Doc. No. 36.)  The court
8 thereafter directed defendants to file a certification of their compliance in keeping with the meet
9 and confer requirement contained in the undersigned's standing order (Doc. No. 12) and
10 permitted plaintiff to file an opposition to defendants' motion for summary judgment within 14
11 days of the filing of defendants' certification.  (Doc. No. 37.)  On March 26, 2025, defendants
12 filed the required certification of the meet and confer efforts.  (Doc. No. 38.)  On April 9, 2025,
13 plaintiff timely filed his opposition to the pending motion.  (Doc. No. 39.)  On April 18, 2025,
14 defendants filed their reply.  (Doc. No. 40.)

## LEGAL STANDARD

16       Summary judgment is appropriate when the moving party "shows that there is no genuine
17 dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.
18 Civ. P. 56(a).
19       In summary judgment practice, the moving party "initially bears the burden of proving the
20 absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387
21 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party
22 may accomplish this by "citing to particular parts of materials in the record, including
23 depositions, documents, electronically stored information, affidavits or declarations, stipulations
24 (including those made for purposes of the motion only), admissions, interrogatory answers, or
25 other materials," or by showing that such materials "do not establish the absence or presence of a
26 genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

---

[7] On August 25, 2022, the pending action was reassigned to the undersigned.  (Doc. No. 11.)

Fed. R. Civ. P. 56(c)(1)(A), (B).  If the moving party will bear the burden of proof on an issue at trial, "the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).  Indeed, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 322–23.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied."  *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

6

1  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

2  trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

3  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in

4  order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations

5  omitted).

6  "In evaluating the evidence to determine whether there is a genuine issue of fact," the

7  court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v.*

8  *Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's

9  obligation to produce a factual predicate from which the inference may be drawn. *See Richards*

10 *v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th

11 Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than

12 simply show that there is some metaphysical doubt as to the material facts. . . . Where the record

13 taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

14 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87 (citations omitted).

## DISCUSSION

**A.  Defendant Rosenberg[8]**

    1.  <u>Title VI and Title VII Claims (Claims 1 and 2)</u>

Defendant Rosenberg moves for summary judgment in his favor as to plaintiff's Title VI and Title VII claims asserted against him on the grounds that individuals may not be found liable under those statutes. (Doc. No. 34-1 at 13.) As noted above, plaintiff asserts these claims against defendant Rosenberg only in his official capacity. (Doc. No. 1 at ¶ 33.)

---

[8] In his opposition, plaintiff states that defendant Rosenberg was dismissed in his "individual capacity" "several years ago" in a response to defendant's motion to dismiss. (Doc. No. 39 at 13.) The court cannot ascertain what plaintiff refers to in this regard because there is no entry on the docket in this action corresponding to a motion to dismiss nor any entry in which the parties agreed to the dismissal of any claims brought against defendant Rosenberg in his individual capacity. Moreover, neither Title VI or Title VII authorize suits against defendants in their individual capacity. In any event, plaintiff's operative complaint names defendant Rosenberg only in his official capacity. (Doc. No. 1 at 1.) Accordingly, in this order the court evaluates only whether plaintiff's claims against defendant Rosenberg in his official capacity survive summary judgment.

Because plaintiff has also asserted his Title VI and Title VII claims against defendant CDCR, plaintiff's Title VI and Title VII claims asserted against defendant Rosenberg will be dismissed as redundant. In this regard, it has been recognized as follows:

> The Ninth Circuit has held that when both an official and a government entity are named, and the officer is named only in an official capacity, the court may dismiss the suit against the official as a redundant defendant. This reasoning applies to the Defendants in this action, who appear to be intended as representatives MJC. Accordingly, Plaintiff's official capacity claims under Title VI will be dismissed.

*Barry v. Yosemite Comm. Coll. Dist.*, No. 1:16-cv-00411-LJO-MJS, 2017 WL 896307, at *6 (E.D. Cal. Mar. 7, 2017); *see also Ames v. City of Novato*, No. 16-cv-02590-JST, 2016 WL 6024587, at *4 (N.D. Cal. Oct. 14, 2016) ("[C]ourts have dismissed Title VII claims against individual employees sued in their official capacities as redundant where the employer is also named as a defendant."); *Redd-Oyedele v. Santa Clara Cnty. Off. of Educ.*, No. 5:22-cv-02128-EJD, 2023 WL 2769093, at *4 (N.D. Cal. Mar. 31, 2023) ("In other words, Ms. Redd-Oyedele may not maintain her Title VII claim against the Individual Defendants in their official capacities because she is already suing their governmental employer, SCCOE, on the same claim.").

2. <u>Intentional Interference With Contractual Relations Claim (Claim 3)</u>

Plaintiff asserts a state law claim for intentional interference with contractual relations against defendant Rosenberg. (Doc. No. 1 at ¶¶ 40–45.) As noted above, plaintiff asserts this claim against defendant Rosenberg only in his official capacity. (*Id.* at 1, 11, 17.) In moving for summary judgment, defendants argue that defendant Rosenberg is entitled to immunity under California Government Code § 820.2. (Doc. No. 34-1 at 18–19.) Though neither party addresses immunity under the Eleventh Amendment in their briefing, the court must consider that issue *sua sponte* as a "jurisdictional bar." *Charley's Taxi Radio Dispatch Corp. v. SIDA of Haw., Inc.*, 810 F.2d 869, 873 n.2 (9th Cir. 1987) ("Like a jurisdictional bar and unlike a traditional immunity, however, the effect of the Eleventh Amendment must be considered *sua sponte* by federal courts.").

A state and its arms and instrumentalities may not be sued for damages in federal court unless the state waives its immunity and unequivocally consents to suit, or Congress abrogates the

Eleventh Amendment immunity.[9] *Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–99 (1984); *Welch v. Tex. Dep't of Highways and Public Trans.*, 483 U.S. 468, 473–74 (1987). "'[A] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself.' . . . Therefore, state officials sued in their official capacities . . . [are] generally entitled to Eleventh Amendment immunity." *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (first ellipsis in original) (internal citations omitted). With regard to consent to suit or waiver of Eleventh Amendment immunity, the state's waiver must be "stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Welch*, 483 U.S. at 473 (citing *Clark v. Barnard*, 108 U.S. 436, 447 (1883) (citations omitted)). As previously noted, plaintiff sues defendant Rosenberg only in his official capacity. (Doc. No. 1 at 1); *see also Massey v. Banning Unified Sch. Dist.*, 256 F. Supp. 2d 1090, 1093, 1097 (C.D. Cal. 2003) (observing that the Eleventh Amendment barred claims for damages brought against an individual defendants acting in their official capacity and considering § 820.2 immunity only as to claims brought against the individual defendants in their personal capacity).

Plaintiff only asserts a single state law tort claim for intentional interference with contractual relations against defendant Rosenberg. There is no indication here that the state of California has waived its Eleventh Amendment immunity as to this tort claim brought under state law. *See Gonzalez v. Cal. Highway Patrol*, No. 1:20-cv-01422-DAD-JLT, 2021 WL 3287717, at *4 n.2 (E.D. Cal. Aug. 2, 2021) ("The State of California 'has waived its sovereign immunity for

---

[9] Plaintiff also seeks specific performance, though does not specify the claim as to which that request is made. (Doc. No. 1 at 23.) "The Supreme Court has recognized that plaintiffs can sometimes sue state officials for prospective injunctive relief to prevent future statutory or constitutional harms." *Henreid v. Feuer*, No. 25-cv-01379-DSF-PVC, 2025 WL 1571350, at *4 (C.D. Cal. May 15, 2025) (internal quotation marks omitted) (quoting *Munoz v. Super. Ct. of L.A. Cnty.*, 91 F.4th 977, 980 (9th Cir. 2024)). However, this exception "cannot be used to obtain an injunction requiring the payment of funds from the State's treasury or an order for specific performance of a state's contract." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 256 (2011) (internal citations omitted). Accordingly, the court finds that to the extent plaintiff seeks an award of monetary damages, such claim would be barred by the Eleventh Amendment. For the same reason, plaintiff's claim for specific performance on the contract would be similarly barred.

torts actions' under California Government Code § 945, but this waiver 'does not . . . constitute a waiver of Eleventh Amendment immunity.'") (quoting *BV Eng'g v. Univ. of Cal., L.A.*, 858 F.2d 1394, 1396 (1988)); *see also Kilroy v. L.A. Unified Sch. Dist.*, No. 16-cv-09068-DMG-JDE, 2017 WL 4417685, at *9–10 (C.D. Cal. May 26, 2017) (finding that a tort claim for intentional interference with contractual relations brought against a school district and individual employees acting in their official capacity was barred by the Eleventh Amendment); *Faz v. N. Kern State Prison*, No. 11-cv-00610-LJO-JLT, 2011 WL 4565918, at *4–5 (E.D. Cal. Sept. 29, 2011) (dismissing various state law causes of action including a claim for tortious interference with contract on the basis that such claims were barred against the defendant CDCR by the Eleventh Amendment); *Regents of Univ. of Cal. v. Aisen*, No. 15-cv-01766-BEN-BLM, 2016 WL 11783767, at *1 (S.D. Cal. Oct. 26, 2016) (denying a motion for leave to file a supplemental cross-complaint where the proposed cross-claim for tortious interference with contract against the plaintiff Regents would be barred by the Eleventh Amendment); *see generally J.S. ex rel. Shalhoob v. Santa Barbara Unified Sch. Dist.*, No. 2:24-cv-01271-CBM-AJR, 2024 WL 5182190, at *3 (C.D. Cal. Aug. 7, 2024) ("Although California has waived its sovereign immunity for tort actions in its own courts, that waiver does not extend to California's Eleventh Amendment immunity to suit in federal courts.").

Consequently, plaintiff's claim for intentional interference with contractual relations asserted against defendant Rosenberg in his official capacity is barred by the Eleventh Amendment and defendant's motion for summary judgment as to defendant Rosenberg will be granted on this basis.

**B.     Defendant CDCR**

Defendant CDCR moves for summary judgment in its favor as to plaintiff's Title VI and VII claims on the grounds that plaintiff has failed to come forward with any evidence supporting an inference of racial discrimination against him. (Doc. No. 34-1 at 14–17.)   The parties agree that the *McDonnell Douglas* framework applies to plaintiff's Title VI and Title VII claims asserted against defendant CDCR. (Doc. Nos. 34-1 at 13–14; 39 at 13–14 (citing *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 354 (2000) (applying the *McDonnell Douglas* test))); *see also*

10

*Rashdan v. Geissberger*, 764 F.3d 1179, 1181 (9th Cir. 2014) ("[T]he *McDonnell Douglas* framework for disparate treatment claims under Title VII applies to Rashdan's Title VI claim."). Below, the court will therefore analyze those claims together.[10]

The Supreme Court has described the three-part test identified in *McDonnell Douglas* as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981) (internal quotation marks and citations omitted) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Here, plaintiff has alleged that his contract was terminated on the basis of his race. (Doc. No. 1 at ¶ 1.) To prove a prima facie case of racial discrimination in the termination context, a black employee can prove "(1) that he is black, (2) that he was qualified for the position [he originally occupied], (3) that he was demoted from that position and ultimately discharged, and (4) that the position remained open and was ultimately filled by a white man." *Lui v. DeJoy*, 129 F.4th 770, 777 (9th Cir. 2025) (alteration in original) (emphasis and internal quotation marks omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). This fourth element may alternatively be proved by demonstrating that "similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Delmore v. Wash. State Dep't of Corr.*, 773 F. Supp. 3d 1125,

---

[10] Because the court concludes that defendant CDCR is entitled to summary judgment as to plaintiff's Title VII claim under the *McDonnell Douglas* framework, the court need not consider whether that claim must separately be dismissed due to any purported failure to exhaust administrative remedies on plaintiff's part. *See U.S. EEOC v. Il Fornaio (Am.) LLC*, No. 22-cv-05992-SPG-JPR, 2024 WL 5316236, at *5–7 (C.D. Cal. Nov. 14, 2024) ("The Supreme Court's decision in [*Fort Bend County v. Davis*, 587 U.S. 541 (2019)] abrogates the Ninth Circuit Court of Appeals' decisions which have ruled that administrative exhaustion is jurisdictional."); *see also Fort Bend*, 587 U.S. at 551 (holding that the requirement to exhaust administrative remedies is mandatory but not jurisdictional).

1148 (W.D. Wash. 2025) (internal quotation marks omitted) (quoting *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 691 (9th Cir. 2017)).

        1.        <u>Prima Facie Case</u>

Defendant CDCR does not dispute that Dr. McQuirter is black, that he was qualified for his position as a contracting oral surgeon with defendant, or that his contract was ultimately terminated. Rather, defendant CDCR argues that plaintiff has not established a prima facie case of discrimination because he has not come forward with any evidence regarding the termination of his contract that would give rise to an inference of discrimination. (Doc. No. 34-1 at 14–15.) Plaintiff argues that he has established racial discrimination in the following two ways: (1) there were no black oral surgeons in the dental department of defendant CDCR following his termination; and (2) his replacement, Dr. Steven Paul, received more advantageous contract terms than plaintiff had under his contract. (Doc. No. 39 at 14–15.) In support of these two contentions, plaintiff cites—without pincites—to his own deposition testimony and his declaration submitted in opposition to defendants' motion for summary judgment. (*Id.* at 15; *see also* Doc. No. 39-2 at 10 (plaintiff testifying that he believes he is "familiar with the African-American oral surgeons in the State of California" and that he believes no other black surgeon was contracted with defendant CDCR); Doc. No. 39-3 at ¶¶ 15–16 (plaintiff stating in part what contract terms his successor received).)

The court will assume without deciding that plaintiff could establish a prima facie case of discrimination. The court does so because, as explained below, it concludes that plaintiff has failed to show that defendant CDCR's justification for terminating his contract was pretextual. *See Antoine v. Lew*, No. 11-cv-01265-TEH, 2013 WL 1345066, at *3 (N.D. Cal. Apr. 2, 2023) (assuming without deciding that the plaintiff could establish a prima facie case of discrimination because he could not show that the employer's justification was pretextual) (citing *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003)); *see also Li v. Northeastern Univ.*, No. 2:22-cv-00444-LK, 2023 WL 3722227, at *16 (W.D. Wash. May 30, 2023) (same).

/////

/////

12

        2.      <u>Proffered Non-Discriminatory Reason</u>

When a plaintiff establishes a prima facie case of discrimination, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Opara v. Yellen*, 57 F.4th 709, 725 (9th Cir. 2023) (alterations and internal quotation marks omitted). "The defendant's burden is one of production, not persuasion, and involves no credibility assessment. *Yomi v. Del Toro*, No. 23-cv-05199-KKE, 2024 WL 4893372, at *5 (W.D. Wash. Nov. 26, 2024) (internal quotation marks and citations omitted) (quoting *Opara*, 57 F.4th at 726) "Thus, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (internal quotation marks and citations omitted) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 507).

Defendant CDCR identifies its reason for terminating the contract as being due to plaintiff's "failure and refusal to provide services to CDCR institutions in accordance with the terms of his contract." (Doc. Nos. 34-1 at 15–16; 34-2 at ¶ 28.) In support of this contention, defendant CDCR provides the sworn declaration of Dr. Morton Rosenberg who states that he and Dr. Weisman made the decision to terminate the contract because of plaintiff's failure to provide contractually mandated services. (Doc. No. 34-8 at ¶ 25.) Defendant CDCR has also presented the deposition of Dr. Weisman at which he testified that the contract with plaintiff was cancelled because, to his knowledge, plaintiff had failed to go to some number of institutions to provide oral surgery services as required. (Doc. No. 34-3 at 41.) Based upon this evidence, the court concludes that defendant CDCR has met its burden of proffering a legitimate, nondiscriminatory reason for plaintiff's termination, namely Dr. Rosenberg and Dr. Weisman's belief that plaintiff was failing to visit CDCR prisons to provide necessary services as required under his contractual duties. *See Brown v. Constellation Brands, Inc.*, No. 1:17-cv-00590-BAM, 2018 WL 4849656, at *7 (E.D. Cal. Oct. 4, 2018) (finding that failure to comply with attendance requirements was a nondiscriminatory reason for termination) (collecting cases). Accordingly, the burden shifts on summary judgment to plaintiff to establish that this given reason for the termination of his contract was merely pretextual for a discriminatory motive.

/////

13

3.     Pretext

To show that defendant CDCR's proffered reason for plaintiff's termination was pretextual, plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Comm. Affairs*, 450 U.S. at 256 (1981) (citing *McDonnell Douglas*, 411 U.S., at 804–805). "These two approaches are not exclusive; a combination of the two kinds of evidence may in some cases serve to establish pretext so as to make summary judgment improper." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001) (internal quotation marks omitted) (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000)). However, when a plaintiff attempts to show pretext indirectly through the use of circumstantial evidence, they "must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003); *see also Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998) (holding that the plaintiff must bring forward specific and substantial evidence showing that the employer's proffered motives were "inconsistent or otherwise not believable"). The Ninth Circuit has noted that, even where a plaintiff succeeds in creating a genuine issue of fact regarding an employer's motive, the creation of "only a weak issue . . . against a backdrop of abundant and uncontroverted independent evidence that no discrimination has occurred" is insufficient to carry plaintiff's burden of persuasion on summary judgment. *Opara*, 57 F.4th at 726 (internal quotation marks omitted) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

Plaintiff first argues that defendant's reason for terminating his contract is pretextual because plaintiff never refused to visit one of CDCR's facilities to provide care. (Doc. No. 39 at 14.) In support of this contention, plaintiff presents his own sworn declaration and also cites to his deposition testimony in which he testified that, rather than refusing to provide oral surgery, he

/////

/////

/////

had merely been trying to reschedule multiple patients to a different time.[11] (Doc. Nos. 39-2 at 33; 39-3 at ¶ 10.) However, "[i]n judging whether an employer's proffered justifications are false, it is not important whether they were objectively false; courts only require that an employer honestly believed its reasons for its actions, even if its reason is foolish or trivial or even baseless." *Fried v. Wynn Las Vegas, LLC*, No. 20-15710, 2021 WL 5408678, at *2 (9th Cir. Nov. 18, 2021)[12] (internal quotation marks and brackets omitted) (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002)); *see also Delmore*, 773 F. Supp. 3d at 1158–59 (finding that summary judgment in favor of an employer was appropriate where there was no "genuine factual question" that the employer honestly believed her reasons for terminating the plaintiff). Although plaintiff's testimony may suggest that Dr. Rosenberg simply misunderstood whether plaintiff was refusing to visit certain CDCR institutions to provide care, it is not substantial and specific enough to raise a genuine issue of material fact regarding whether Dr. Rosenberg honestly believed this proffered reason for termination of plaintiff's contract. Moreover, the Ninth Circuit has observed that a plaintiff cannot establish a genuine issue of material fact regarding pretext "where the only evidence presented is uncorroborated and self-serving testimony" such as plaintiff's own deposition testimony or declaration. *Opara*, 57 F.4th at 726 (internal quotation marks omitted). Accordingly, the court finds plaintiff's argument in this regard to be unpersuasive under the law.

Plaintiff next suggests that the decision to terminate him was pretextual because the person hired to replace him—Dr. Steven Paul—is not black and received more favorable terms in his contract. (Doc. No. 39 at 14–15.) It is undisputed by the parties that Dr. Paul received "some considerations regarding scheduling that were not included in [plaintiff's] 2019 contract with [defendant] CDCR." (Doc. No. 34-2 at ¶ 37.) The exact nature of those "considerations" is not explained in any of the evidence presented to the court on summary judgment by either party.

---

[11] The court notes that, later in his deposition testimony, plaintiff testified that he had other disputes regarding scheduling with other of defendant CDCR's facilities. (Doc. No. 39-2 at 36–38.)

[12] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

15

Plaintiff offers no argument or citation to authority that supports his contention that a replacement being hired on more favorable terms alone gives rise to a reasonable inference of pretext. Nevertheless, the court observes that a plaintiff can present a "triable issue of fact of pretext" by showing that "the employer treated similarly situated employees more favorably than the plaintiff." *McKinney v. Am. Airlines, Inc.*, 641 F. Supp. 2d 962, 974 (C.D. Cal. 2009) (internal quotation marks omitted) (quoting *Josephs v. Pac. Bell*, 443 F.3d 1050, 1065 (9th Cir. 2006)). "To satisfy such element, [plaintiff] must identify employees outside [his] race . . . who were similarly situated to [him] 'in all material respects' but who were given preferential treatment; they must 'have similar jobs and display similar conduct.'" *Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1015 (9th Cir. 2018) (quoting *Nicholson v. Hannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009)).

Here, however, plaintiff has offered no evidence that other contractors at his time of employment outside of his protected class were given preferential treatment, instead only contending that Dr. Paul was later given preferential treatment. (Doc. No. 39 at 14–15); *see also Campbell*, 892 F.3d at 1015–16 (rejecting several of the plaintiff's claims of disparate impact discrimination because "she has not identified even a single employee for comparison."); *see also U.S. E.E.O.C. v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267, 1291–92 (D. Nev. 2009) (finding that the plaintiff did not show other employees were similarly situated to him despite them working the same kind of job because the comparators were hired after he was terminated and he did not identify if they performed similar duties without distinguishing circumstances). Nor has plaintiff come forward with any evidence showing that he and Dr. Paul are similar "in all material respects" as is required. For instance, regarding the changes in scheduling practices made as to Dr. Paul, defendant CDCR has presented the deposition of Dr. Milnes in which he testified that Dr. Paul did not work with associates to the same degree as plaintiff did and therefore had diminished availability that required greater coordination. (Doc. No. 34-3 at 54–55.) Plaintiff also argues that Dr. Paul was compensated at a higher rate than he was, but does not dispute defendant CDCR's assertion that the contract with Dr. Paul was an "emergency contract" and that any modifications to plaintiff's contract would have required reopening plaintiff's contract to

16

competitive bidding. (Doc. No. 39-1 at 10, 13.) In short, the evidence before the court on summary judgment establishes that Dr. Paul was contracted with under different circumstances and had different resources than plaintiff, both of which circumstances indicate that he is not similarly situated to plaintiff. *See Rounds v. Bd. of Trs. of Cal. State Univ.*, No. 1:20-cv-00170-DAD-CKD, 2024 WL 4333170, at *12–13 (E.D. Cal. Sept. 27, 2024) (finding that the plaintiff had not shown pretext on the basis of preferential treatment to similarly situated employees where she did not provide evidence that those employees were similarly situated); *see also Israel v. U.S. Bank, N.A.*, 653 F. Supp. 3d 685, 695 (D. Ariz. 2023) (finding that a new banker was not similarly situated to the plaintiff where the new banker was hired after the plaintiff and had a different experience level).

Because plaintiff has not cited specific and substantial evidence demonstrating that defendant CDCR's proffered reasons for terminating his contract were pretextual, he has failed to meet his burden on summary judgment. Accordingly, defendant CDCR is entitled to summary judgment in its favor as to plaintiff's Titles VI and VII claims.

## CONCLUSION

For the reasons explained above,

1. Defendants' motion for summary judgment (Doc. No. 34) is GRANTED;
2. The Clerk of the Court is directed to ENTER Judgment in favor of defendants; and
3. The Clerk of the Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated: **September 29, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

17